## Harding, Appellant, v. Pen Argyl National Bank.

*Banks and banking—Partnership account—Dissolution—Notice to bank—Charging up notes of partner—Cashier.*

A partnership consisting of two persons opened a bank account in the firm name, and after several years the partnership was dissolved, and thereafter the bank without any knowledge of the dissolution, charged against the account two personal notes of one of the partners. The other partner on discovering this by the balancing of the bank book, notified the bank of the dissolution, and objected to the charge of the two notes. He told the bank he would undertake to collect the amount of the charge, and was told by the cashier that the only way he could collect it was by law. He then drew a check for the balance remaining with the notes charged up, and took away the notes. Without drawing any further check for the amount he claimed, he brought an action against the bank. *Held:*

(1) That the action should have been brought in the firm name, but as the error was amendable, the case for that reason alone should not be dismissed;

(2) That as the plaintiff did not draw and present a check for the balance which he claimed he could not maintain an action for it.

(3) That in the absence of notice of the dissolution, the bank was not prohibited from doing what it had previously done with the apparent consent of the partners. .

(4) That as plaintiff did not return the notes, he put it out of the power of the bank to recover anything on them, and for this reason he could not maintain an action for the amount evidenced by the notes.

(5) That the statement of the cashier did not indicate an intention of the bank to waive any of its legal rights.

(6) That the cashier had no authority to deliver the notes to the plaintiff, and his action in doing so could not be construed as a waiver of the bank's right to have the securities returned before plaintiff could maintain his action. ·

Argued Dec. 4, 1916.   Appeal, No. 103, Oct. T., 1916, by plaintiff, from judgment of C. P. Northampton Co., April T., 1914, No. 94, on verdict for defendant in case of Ralph Harding, trading and doing business as Harding Brothers v. Pen Argyl National Bank.   Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREX-LER and WILLIAMS, JJ.   Affirmed.

Assumpsit to recover a balance alleged to be due on a bank account opened under the name of "Harding Brothers."   Before MCKEEN, J.

The firm of Harding Brothers consisted of Ralph Harding, the plaintiff, and Frank Harding.   The suit was to recover $381 with interest from December 13, 1913.   The bank account showed that the defendant had paid upon checks and notes charged to the account everything that had been deposited.   The evidence showed that the $381 claimed had been charged in the account so as to cover two unpaid notes amounting to $381 made by Frank S. Harding.   Plaintiff claimed that this was unauthorized.   The facts of the case appear by the opin-

ion of the Superior Court. The court entered a compulsory nonsuit which it subsequently refused· to take off.

*Error assigned* was in refusing to take off nonsuit.

*Everett Kent,* for appellant.—It was gross negligence in the bank to allow the overdraft and it cannot protect itself in this summary manner and deny its depositor's check: First Nat. Bank of Lock Haven v. Mason, 95 Pa. 113; Paterson v. Marine Nat. Bank, 130 Pa. 419; Citizens N. Bank v. Alexander, 120 Pa. 476; Burger v. Burger, 135 Pa. 499.

*H. M. Hagerman,* for appellee.

OPINION BY HEAD, J., July 13, 1917:

In November, 1908, a partnership composed of Ralph Harding, the plaintiff, and his brother, Frank Harding, doing business under the firm name of Harding Bros., opened an ordinary deposit account with the defendant bank. The pass book issued to them stated the account to be with the firm of Harding Bros., which of course meant the firm as it existed at the time the account was opened. From that date, at least until July, 1913, deposits continued to be made and checks to be drawn in the customary way against it. In May, 1914, the present plaintiff, Ralph Harding, began an action against this defendant for the recovery of about three hundred and eighty dollars which he alleged still remained in the said account and which the bank had unjustly refused to pay to him. He avers in his statement, and supports the allegation by his own testimony, that in July, 1913, the partnership theretofore existing between his brother and himself was dissolved. He presented no instrument in writing providing for such dissolution or declaring what distribution of the firm assets, including the bank account, had been made between the partners. It appears

further, from his testimony, that the reason for the dissolution was his complaint that his brother, Frank, had been withdrawing from the partnership account more than was justly his share of it. Whether these withdrawals were made by checks, issued by Frank Harding for his own individual use or by notes made by him and charged to the firm account, does not appear. No notice of the alleged dissolution of partnership was given to the bank nor any notice that it should not, after July, 1913, continue to deal with the firm account as it had previously done with the apparent consent of both partners. In December, 1913, the plaintiff testifies he took the pass book to the bank to have it balanced or written up. When that was done the book was returned to him personally together with certain cancelled checks and notes which had been charged against the account. Upon examination of these in the bank, the plaintiff testifies he discovered that two notes given by his brother, Frank, payable at the bank and aggregating three hundred and eighty dollars had been charged to the firm account. Thereupon, for the first time, he notified the bank of the dissolution of the partnership in the previous July and declared, as he testifies, that such a charge was unwarranted and he would undertake to collect from the bank the amount so charged to the firm account. He was then told, as he says, by the cashier of the bank, that the only way he could recover it would be to collect it by law. The plaintiff then drew a check, not for the entire amount of the balance that would have been due without the alleged improper charge, but for what remained with the notes charged up. This check was promptly paid over the counter. The plaintiff took away with him the notes that had been charged up, and, without ever returning them or offering to return them, began this action, as already stated, in May, 1914. The plaintiff, as his own testimony shows, never drew a check against the balance which he alleges to have been due in the deposit account, which, as he says, became his individual property from

the time of the dissolution of the partnership in July, 1913.

When this state of facts became apparent from the plaintiff's own testimony, the learned trial judge entered a compulsory nonsuit which he afterwards refused to take off and this appeal followed.

We are first asked to say the action cannot be maintained because the plaintiff sues in his own name, to recover a sum which originally belonged to a partnership of which he was but a member, for the reason that if he owned it at all, it must have been in right of an assignment, legal or equitable, from his former partner. The action therefore should have been in the name of the firm for the use of the present plaintiff. Under the modern practice acts and the departures they have brought about from the old rules of pleading, we would not feel justified in dismissing the plaintiff's case on this account. The defective pleading, if necessary to work out the ends of justice, could have been amended on application in the court below and the same amendment could be allowed by this court.

Some other matters are urged upon us by counsel for the appellee which we do not deem of sufficient importance to warrant any special discussion, but there are two or three questions raised which we must now consider. (1) The contract of a bank with its depositor, in opening what we may term an ordinary checking account, doubtless is that it will pay over the deposits in its hands on the order of the depositor, but that order is to be in writing in the usual form current in the business world. It would be intolerable were the law to be that a man may make a deposit in a bank, and upon the declination of an officer or clerk of the bank to pay over the money on a mere oral demand, a suit could be maintained for its recovery. There is nothing in the evidence in this case to show that the bank ever refused to pay a check properly drawn against the alleged balance. (2) There is nothing in the evidence to show that at or before the

time when the bank charged up to the firm account the two notes of Frank Harding it had any notice of the change in the business relations of the two brothers, or that it was thereafter prohibited doing what it had previously done with the apparent consent of the partners. (3) There is no evidence that at the time the plaintiff took away from the bank the two notes of his brother, which, as he alleges, were improperly charged to the firm account, his brother was insolvent or that a recovery could not have been had either by him or the bank against the maker and endorser of those notes. He never returned the notes to the bank; he never tendered a return of them but retained them until nearly three years later at the time when the cause was about to be tried. Sometime in the interval Frank Harding had confessed a judgment in favor of his mother upon which an execution had issued and his property had been sold by the sheriff. Upon this state of facts we think it was legally impossible for the plaintiff to maintain an action for the recovery of the money evidenced by the notes. He had put it out of the power of the bank, by taking them and retaining them, to recover anything from the maker or endorser of them. It appears to us it would not be in accordance with the dictates of either common justice or sound legal principles to now permit him to recover unless he may rely upon his final proposition. We now state it. (4) His counsel argues that because the cashier of the bank said under existing circumstances you cannot repudiate this transaction unless you sue to recover your money, the bank has waived its right to demand what would otherwise be a clear legal requirement to be performed by the plaintiff before suit could be brought. This conclusion cannot be sound for two reasons. The language used by the cashier certainly does not imply any intention that in case of such suit the bank would waive any of its legal rights. On the contrary, it is rather a warning that it would rest its case on such right. Secondly, because there is no trace of evidence

the cashier had any authority to practically give away any valuable property of the bank. It was clearly not within the scope of his apparent authority to hand over two valuable securities to the plaintiff, and, as already stated, there is no evidence at all of any express authority vested in him to do such a thing. There was therefore no evidence to warrant the court in submitting to the jury, to be determined as a question of fact, whether or not the bank had waived its right to have the securities returned before the plaintiff could maintain his action.

Under these circumstances we are of opinion the learned court below was right in entering a compulsory nonsuit and thereafter refusing to take it off. The assignments of error are overruled.

Judgment affirmed.